**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| NIKKI LEANNE BEARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 12-1217-JWL |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Commissioner's final decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

**I. Background**

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD, alleging disability beginning September 16, 2006. (R. 9, 149-55). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She now alleges that the Administrative Law Judge (ALJ) erred in weighing the medical opinions both of her treating physician, Dr. Brown, and of Dr. Pro, a psychiatrist who performed an independent psychiatric evaluation as part of Plaintiff's worker's compensation claim; and also erred in evaluating the credibility of Plaintiff's allegations of symptoms.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses a familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the ALJ's decision. It begins its analysis with review of the ALJ's credibility determination.

## II.     Credibility Determination

Plaintiff claims the ALJ's credibility determination is erroneous because it was based only upon the objective medical evidence of record "except for a later mention of [Plaintiff's] daily activities in one paragraph." (Pl. Br. 13). Plaintiff does not argue that the ALJ should have ignored the medical evidence, but points to the seven regulatory factors for evaluating credibility and argues that the ALJ "failed to consider all of the credibility factors as required by the regulations." Id. at 13-14. The Commissioner argues that the ALJ properly evaluated the credibility of Plaintiff's allegations. She argues that the ALJ considered all of the regulatory factors for evaluating credibility and that a factor-by-factor analysis and discussion of each factor is not required. She points to record evidence tending to support the ALJ's credibility determination, and argues that the court should defer to the ALJ's credibility findings.

4

As the parties agree, the ALJ found that Plaintiff's allegations of limitations resulting from her impairments "are not credible." (R. 19). Moreover, he specifically listed and summarized the seven regulatory factors for evaluating credibility, and cited the regulation and the Social Security Ruling which controlled his credibility determination. Id. at 19 (citing 20 C.F.R. § 404.1529; Soc. Sec. Ruling (SSR) 96-7p). Those are the very factors, regulation, and ruling which were cited in Plaintiff's Brief. (Pl. Br. 13-14). Over the next three paragraphs, the ALJ stated five reasons he had determined Plaintiff's allegations are not credible: her activities of daily living are not consistent with her alleged level of pain, there is little evidence she has requested increased pain medication, there is little evidence that she has reported side effects of medication, her allegations are exaggerated, and her allegations are inconsistent with the other record evidence. (R. 19-20).

The court's review of an ALJ's credibility determination is deferential. Credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir.

1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

As the Commissioner argues, Tenth Circuit "precedent 'does not require a formalistic factor-by-factor recitation of the evidence ... [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility.'" Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009) (quoting Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000)). As discussed above, the ALJ did just that, and set forth the factors he relied upon in evaluating Plaintiff's credibility. Plaintiff does not argue otherwise. She merely implies that it was error for the ALJ in this case not to discuss other unnamed factors in reaching his credibility determination. Plaintiff does not cite, and the court does not find, record evidence which would preclude the ALJ's credibility finding. She has shown no error in the credibility determination.

## III. Medical Opinions

Plaintiff claims the ALJ erred in evaluating the medical opinions of a non-treating source psychiatrist, Dr. Pro and of his treating source physician, Dr. Brown. He argues that Dr. Pro's opinion should have been accorded greater weight because "he is the only medical doctor in the record who considered the combined effect of both plaintiff's physical and mental impairments" (Pl. Br. 5), that the ALJ did not consider the combined effect of Plaintiff's mental and physical impairments, and in fact the ALJ discounted Dr.

6

Pro's opinion because the psychiatrist considered the combined effects of Plaintiff's mental and physical impairments.  Id. 4-6.  Plaintiff then quotes portions of Dr. Pro's report and explains how in her view his opinion should have been given greater weight.  Id. 6-10.

Plaintiff next addresses the treating source opinions of her primary care physician, Dr. Brown, and argues that although the ALJ accorded Dr. Brown's opinions considerable weight, he erred in according only "little weight" to Dr. Brown's opinions regarding Plaintiff's ability to stand, walk, and sit.  Id. at 10-11.  She argues that contrary to the ALJ's finding (that the limitations relating to Plaintiff's left upper extremity "have little impact on her ability to stand, walk or sit" (R. 17)) "the pain she experiences adversely affects her overall functioning"--presumably including sitting, standing, and walking.  (Pl. Br. 11).  Plaintiff grudgingly acknowledges that the ALJ "somewhat considered the length of Dr. Brown's treatment relationship," but argues that he "failed to consider . . . the nature and extent of their treatment relationship."  Id.

In her final argument, Plaintiff asserts that she does not claim that either Dr. Pro's opinion or Dr. Brown's opinion is sufficient alone to demonstrate disability but that courts are "concerned with the necessarily incremental effect of each . . . medical report or opinion on the aggregate assessment," and that adjudicators must decide whether to adopt or reject each individual opinion within a physician's report.  (Pl. Br. 12) (citing Lackey v. Barnhart, 127 F. App'x 455, 458-59 (10th Cir. 2005); SSR 96-5p).  Confusingly, in the same argument Plaintiff also asserts that "an ALJ may not pick and

7

choose from a medical opinion, using only those portions that are favorable to a finding of non-disability." Id. (citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004); Lee v. Barnhart, 117 F. App'x 674, 678 n.2 (10th Cir. 2004)).

### A. Standard for Evaluating Medical Opinions

Medical opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. 20 C.F.R. § 404.1527(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2013). A physician who has treated a patient frequently over an extended period of time (a treating source)[2] is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight

---

[2]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. § 404.1502.
  "Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.
  "Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

8

than the opinions of nonexamining sources who have merely reviewed the medical record.  Robinson, 366 F.3d at 1084; Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent, 698 F.2d at 412, Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [she] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2013) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end.  Id.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id.  Those factors are:

9

(1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

### B.      The ALJ's Evaluation of the Medical Opinions

The ALJ's discussion of the medical treatment, examinations, and opinions occupies the better part of four pages in the decision. (R. 15-18). In that discussion, the ALJ summarized treatment and examinations made by, and opinions tendered by eight physicians or psychologists: Dr. Frevert, Dr. Pratt, Dr. Prostic, Dr. Hoyer, Dr. Pro, Dr. Whitten, Dr. Brown, and Dr. Phillips.

The ALJ noted that Dr. Brown was Plaintiff's treating physician, but determined that he was unable to give Dr. Brown's opinion controlling weight. (R. 16-17). He cited the regulatory factors for weighing medical opinions (R. 17), and explained the weight he accorded to each medical opinion. Id. at 17-18. He accorded "considerable weight" to Dr. Brown's opinions, except that he noted he could only give "little weight" to Dr. Brown's opinions that Plaintiff could stand and/or walk only four hours in a workday, and

could sit only four hours in a workday. Id. at 17. He stated he did so because there was little, either in Dr. Brown's treatment records or in the record as a whole, to support such restrictions, and because Plaintiff's primary limitation was in her left upper extremity which has little impact on her ability to stand, walk, or sit. Id.

The ALJ accorded "little weight" to Dr. Pro's opinion that when Plaintiff's physical and mental impairments are combined she is "permanently and totally disabled." Id. He accorded "little weight" to Dr. Pro's opinion because: (1) the question of disability is reserved to the Commissioner; (2) Dr. Pro's exam was a worker's compensation examination and the definition of disability is different in the worker's compensation context than in the Social Security context; (3) Dr. Pro's opinion regarding Plaintiff's physical limitations appears to be based on written reports received from other healthcare providers rather than a personal examination; (4) Dr. Pro's mental limitations appear to be based largely on Plaintiff's self-reports (and the ALJ found Plaintiff's allegations not credible); (5) disability is inconsistent with Dr. Pro's records, and because (6) disability is inconsistent with the record as a whole. (R. 17-18).

The ALJ gave "considerable weight" to Dr. Frevert's opinion that Plaintiff was permanently restricted from overhead activity with her left upper extremity, and to Dr. Phillips's opinion that Plaintiff is limited to lift 5 pounds with her left arm and zero pounds overhead with her left arm. Id. at 18. He gave "considerable weight" to Dr. Whitten's opinion that Plaintiff is limited to simple, semi-skilled work and to Dr. Whitten's opinion that Plaintiff's concentration is "seriously limited"--to the extent that

11

"seriously limited" as used by Dr. Whitten equates to moderate impairment in cognitive functioning and is consistent with the RFC assessed, which precludes exposure to hazards; provides for simple, routine, repetitive tasks not performed in a fast-paced production environment; and requires no more than occasional reading for content and comprehension and/or mathematical calculations. Id Finally, the ALJ accorded "significant weight" to the opinions of the state agency consultants because they were grounded in the record evidence, were internally consistent, and were consistent with the evidence as a whole. Id.

### C.     Analysis

As required by regulations and rulings, the ALJ first recognized that Dr. Brown is Plaintiff's treating source physician, and considered whether his opinions must be accorded controlling weight. He determined they could not be accorded controlling weight, summarized the regulatory factors for weighing medical opinions, and proceeded to weigh each of the medical opinions in accordance with those factors.

Plaintiff's argument that the ALJ failed to consider the nature and extent of Dr. Brown's treatment relationship with Plaintiff is without merit, for it was while the ALJ was in the process of weighing Dr. Brown's opinions that he stated the regulatory factors for weighing medical opinions and specifically noted that one of those factors is "the nature and extent of the treatment relationship." (R. 17). If Plaintiff is arguing that it was error for the ALJ to fail to specifically state "the nature and extent of the treatment relationship between the claimant and Dr. Brown was . . ." or words to a similar effect,

she misapprehends the standard for applying the regulatory factors. The court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300). Here, the ALJ recognized that Dr. Brown was plaintiff's treating physician in "an established treating relationship," and acknowledged that, as such, he was in the best position to provide a longitudinal picture of Plaintiff's conditions. (R. 17). There can be no doubt that the decision was sufficiently specific to make clear the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight. More is not required.

Plaintiff argues that the ALJ erred in finding that her left upper extremity problems have little impact on her ability to stand, walk, or sit, because her shoulder pain adversely affects her overall functioning. But, she does not explain how the shoulder pain adversely affects her ability to stand, walk, or sit, and Dr. Brown's treatment notes and medical source statement do not explain how the pain adversely affects her ability to stand, walk, or sit. This is an argument which merely asks the court to reweigh the evidence and accord greater weight to Dr. Brown's opinion and to Plaintiff's allegations of pain than accorded by the ALJ. That is not the court's prerogative.

Plaintiff's arguments with regard to Dr. Pro's opinion are to a similar effect. To be sure, the Commissioner is required by statute to consider the combined effect of all of Plaintiff's impairments in deciding whether Plaintiff is disabled. But the mere facts that

13

Dr. Pro stated that the effect of the combination of Plaintiff's physical and mental impairments is greater than the arithmetic sum of the two impairments, and that he opined that the combination of her impairments renders her permanently and totally disabled does not mean that the ALJ must accept either of those opinions in his evaluation of disability. Even more, it does not mean that the ALJ failed to consider the combined effects of Plaintiff's impairments. As noted above, the ALJ considered Dr. Pro's opinion and expressed six reasons for according that opinion "little weight."

Plaintiff's argument that "there is no evidence that Dr. Pro's opinion was based 'largely' on plaintiff's statements," (Pl. Br. 9) is without merit. First, the ALJ did not find that all of Dr. Pro's opinion were based on Plaintiff's statements. As Plaintiff's argument assumes, and as the ALJ specifically found, Dr. Pro based his opinion regarding physical impairments on several written reports he was provided, but the ALJ found that Dr. Pro's opinion regarding mental limitations was "based largely on the claimant's self-reporting." (R. 17). Second, in the same paragraph of her argument Plaintiff appeals to three psychological screening tests performed by Dr. Pro, yet, at least two of those very tests were reported by Dr. Pro as being based upon Plaintiff's subjective ratings. Dr. Pro stated that on the Quality of Life Scale Plaintiff "rated the quality of her life as poor," and that on the AMA pain scale "she rated her pain as severe in multiple dimensions." These very facts to which Plaintiff cites constitute evidence that Dr. Pro's mental limitations are in fact based largely on the claimant's self-reporting as the ALJ found.

14

Plaintiff's concern with the "necessarily incremental effect of each . . . medical report or opinion on the aggregate assessment," reveals the greatest flaw in Plaintiff argument regarding the evaluation of the medical opinions. Other than her statements that the medical opinions of Dr. Pro and Dr. Brown should have been accorded greater weight, and the inherent necessary implication that the other medical opinions should have been accorded lesser weight, Plaintiff does nothing to establish that the ALJ's weighing of the other medical opinions was erroneous. But the decision reveals that the ALJ applied the correct legal standard in weighing the medical opinions. He first determined that the treating source opinion could not be accorded controlling weight, and then proceeded to weigh <u>all</u> of the medical opinions in accordance with the regulatory factors for weighing medical opinions. He explained the weight he accorded each opinion, and the reasons for that weight. Without attacking the medical opinions of the six other practitioners, or explaining how they were wrongly weighed, Plaintiff merely seeks to have the court reweigh the medical opinions, substitute its judgment for the ALJ's judgment regarding the weight to be accorded to each of them, and to accord greater weight to Dr. Pro's opinion and to that portion of Dr. Brown's opinion relating to Plaintiff's ability to stand, walk, and sit. However, as previously noted herein, the court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman</u>, 511 F.3d at 1272 (quoting <u>Casias</u>, 933 F.2d at 800); <u>accord</u>, <u>Hackett</u>, 395 F.3d at 1172.

15

In a final comment, the court notes that Plaintiff's brief suggests that in according "considerable weight" to most of Dr. Brown's opinions but only "little weight" to his opinions regarding Plaintiff's ability to stand, walk, and sit, the ALJ was improperly picking and choosing from Dr. Brown's opinions, "using only those portions that are favorable to a finding of non-disability." (Pl. Br. 12) (citing Robinson, 366 F.3d at 1083; Lee, 117 F. App'x at 678 n.2). The situation presented here is easily distinguished from those cited by Plaintiff. In those cases, the ALJ either "failed to provide any explanation of how he assessed the weight of the treating physician's opinion," Robinson 366 F.3d at 1083, or "pick[ed] out portions of a medical report that favor denial of benefits while ignoring those favorable to disability." Here, the ALJ provided an explanation of how he assessed Dr. Brown's opinions and did not ignore any of those opinions. (R. 17). Even with regard to the opinions concerning Plaintiff's ability to stand, walk, and sit, he specifically addressed those opinions and explained why he did not accept the limitations therein. Id. Plaintiff has shown no error in the final decision of the Commissioner.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

Dated this 16th day of December 2013, at Kansas City, Kansas.

                                        s:/ John W. Lungstrum
                                        **John W. Lungstrum**
                                        **United States District Judge**